**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

STEPHEN ROY DAHL,

               Plaintiff,

vs.                                     CASE NO.: 8:05-CV-66-T-17TBM

AMERI-LIFE HEALTH SERVICES
OF SARA-BAY, LLC.

               Defendant.

----------------------------------------------------------/

## <u>ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

       This cause comes before this Court on Defendant's, Ameri-Life Health Services of Sara-Bay, LLC ("Ameri-Life"), Motion for Summary Judgment and Supporting Memorandum of Law, filed August 10, 2006 (Docket No. 32), Plaintiff's Response to Defendant's Motion for Summary Judgment and Supporting Memorandum of Law, filed September 8, 2006 (Docket No. 43), the Affidavit of Stephen Dahl, filed September 8, 2006 (Docket No. 44), the Affidavit of Michelle Voy, filed September 8, 2006 (Docket No. 45), Notice by Stephen Roy Dahl, filed September 11, 2006 (Docket No. 47), and Notice by Stephen Roy Dahl, filed September 11, 2006 (Docket No. 48).

       On January 6, 2005, Plaintiff, Stephen Roy Dahl filed a three count complaint against Defendant: Count I, Title VII of the Civil Rights Act of 1964 as amended (42 U.S.C. 2000e, et seq.); Count II, Florida Civil Rights Act ("FCRA"), Section 761.10, Florida Statutes; and Count III, Florida private-sector Whistle Blower Act, Section 448.101, et seq., Florida Statutes (Docket No. 1).  In particular, the Plaintiff presented a retaliation claim in which he alleges that he was discharged in retaliation for opposing sexual harassment.

       On February 9, 2005, Defendant Ameri-Life filed an answer and defenses, in which it

1

contends that the Plaintiff was an independent contractor, and, therefore, not covered under the above-referenced retaliation statutes (Docket No. 5).

    For the reasons outlined below, this Court finds that Defendant's Motion for Summary Judgment should be **GRANTED**.  The Court finds the following facts to have been established for the purposes of resolving the pending motion.

## BACKGROUND

Plaintiff, Stephen Roy Dahl, entered into an independent agent agreement ("Contract") with Ameri-Life in July 1998, and again in September 2000,  to sell insurance policies as an insurance agent licensed under the laws of the State of Florida. Ameri-Life sells insurance products to consumers pursuant to agreements with various insurance companies.  Under the heading "Relationship of the Parties," the Contract provided that the Plaintiff would be an independent contractor and that "nothing would be construed as creating the relationship of employer and employee for any purpose."  The Contract further notes that "[plaintiff] will not be treated as an employee for any reason, including for purposes of Federal Insurance Contributions Act (FICA), the Social Security Act, the Federal Unemployment Tax Act, Federal Income Tax Act Withholding or State Income Tax Withholding, if applicable."  Furthermore, the contract provided that the Plaintiff was responsible for any expenses incurred in conducting business under the terms of the agreement. Moreover, the Contract stated that Plaintiff was not eligible to participate in any fringe benefit programs sponsored by the Defendant for its employees.

Additionally, the Contract allowed the Plaintiff to exercise his own independent judgment as to the "time, place and manner" in which he would perform services under the Contract.  Also, the Contract indicated that the Plaintiff was not precluded from selling policies from different companies, provided Plaintiff received Ameri-Life's permission. The Contract limited the Plaintiff as to only selling products approved by the company and the Plaintiff was to be paid by commission based on the value of the insurance policies he sold.  However, Plaintiff did not sell any products for any other companies during his work for Ameri-Life. While working for Ameri-Life, the Plaintiff never sought  to sell any insurance products from any non-approved companies.

Plaintiff was responsible for the routine business expenses he incurred such as rent,

utilities, telephone, cell phone, computer, stationary, transportation, licensing fees, and continuing education costs.  Ameri-Life did not control the Plaintiff's ability to form a corporation and/or to hire and pay for his own staff.  However, the lease agreement that the Plaintiff entered into with Ameri-Life entitled the Plaintiff to the use of a desk, chair, copier, fax machine, basic secretarial services, and fifty assorted leads per month for a nominal fee of $50.00 per month.  Plaintiff also maintained an office at home, where he used and paid for his own equipment, including telephone, transportation and utilities without reimbursement from the Defendant.

The Plaintiff assumed fiscal responsibility for the success or failure of his business by generating his own sales through finding leads for himself, by purchasing leads from telemarketers or advertising, getting referrals from clients, self-prospecting or giving speeches. The Plaintiff was not required to work at specified times of the day or week, he was not required to maintain office hours, and he decided the location of his work.   Specifically, the Plaintiff set his schedule, dictated his driving route, made most of his own appointments and advised his clients without a supervisory presence.

The Plaintiff was responsible for his own taxes because Ameri-Life did not pay social security, Medicare, or federal withholding.  The Plaintiff was paid by commission based on the value of the insurance policies he sold.  The Plaintiff received a form 1099 that identified him as a "non-employee."  Also, the Plaintiff used a schedule C, which can only be used by self-employed individuals, to receive deductions for his business expenses, including office rent, home office expenses, transportation, gasoline, clothing, telephone, utilities, office supplies and business cards.  Additionally, the Plaintiff was not provided with vacation, sick leave, health insurance, or retirement.  Nor was the Plaintiff covered by Ameri-Life's employee handbook or work rules.

In contrast, the Plaintiff was required to use the corporate address and telephone number on his business card and wear company attire. The Plaintiff was required to travel and to attend mandatory training sessions and morning meetings. Plaintiff had to use approved forms, which were checked over by the secretary and regional manager before submission.  Although the Plaintiff did not receive paid vacation time from the Defendant, he had to seek management approval to take the time off.  Moreover, the Plaintiff was terminated without the requisite

fifteen days notice under the Contract.

A female employee of the Defendant testified that she confided in the Plaintiff about numerous incidences of sexual harassment that she allegedly experienced at the Defendant's company. The female employee testified that she confided in Mr. Dahl and he advised her to seek protection from the Equal Employment Opportunity Commission ("EEOC"). The Plaintiff complained to the human resource representative about the sexual harassment in the workplace on or about April/May 2003. On or about May 14, 2003, the Plaintiff complained to Michael McCrary about the sexual harassment in the workplace. On or about May 23, 2003, the Defendant terminated the Plaintiff on the premises that his sales production had declined such that it was not profitable for Defendant to use him as an independent contractor.

On July 16, 2003, Mr. Dahl filed a Charge of Discrimination with the EEOC, which was amended on February 2, 2004 to include additional defendants. The Plaintiff filed an amended EEOC charge that alleged Ameri-Life terminated his employment in retaliation for complaining about the sexual harassment of female employees, and for encouraging females to complain about sexual harassment. The EEOC issued a letter of determination on September 23, 2004 finding that there is reasonable cause. After receiving the right-to-sue letter from the EEOC, the Plaintiff, Stephen Roy Dahl filed a three count complaint against Defendant on January 6, 2005.

### STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admission on file, together with affidavits, if any, show that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56©). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues if material fact that should be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-324 (1986). When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file" designate specific facts showing there is a genuine issue for trial. *Id.*

In determining whether the moving party has met its burden of establishing that no genuine issue of a material fact exists and that it is entitled to judgment as a matter of law, the

4

Court must draw inferences from the evidence in a light most favorable to the non-movant, in this case the Plaintiff, and resolve all reasonable doubts in that party's favor. *Samples on behalf of Samples v. City of Atlanta*, 846 F.2d 1328 (11th Cir. 1988).  "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; that requirement is that there be no genuine issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)(emphasis added).

## LEGAL ANALYSIS

Defendant contends it is entitled to summary judgment on Plaintiff's claims of retaliation and discrimination under Title VII, the FCRA, and the Whistle-blower Act because Plaintiff worked as an independent contractor rather than an employee.  The protections under Title VII extend only to the employment relationship and not to independent contractors.  *See, e.g., Cobb v. Sun Papers, Inc.*, 673 F.2d 337 (11th Cir. 1982).  A person's employment status "is a question of federal law to be ascertained through consideration of the statutory language of the Act, its legislative history, existing federal case law, and the particular circumstances of the case at hand." *Cobb*, 673 F.2d at 339 (internal citations and quotations omitted); *Cuddleback v. Florida Bd. of Educ.*, 381 F.3d 1230 (11th Cir. 2004)(affirming district court's summary judgment finding that the plaintiff was an employee under Title VII).

Title VII offers little guidance on the distinction between an employee and an independent contractor. Title VII defines "employee" as "an individual employed by an employer."42 U.S.C. 2000e(f).  Because there is "no indication that Congress intended the words of the statute[s] to have anything but their ordinary meaning as commonly understood," the term "employee ... is to be construed in light of general common law concepts" taking into account the "economic realities of the relationship." *Cobb*, 673 F.2d at 340-341.  This so called "hybrid economic realities test" demands that "the common law principles of agency and the right of the employer to control the employee" be used to determine the employee's status. *Id.* at 341.

Among the common law factors that are to be considered in conducting the analysis are: (1) the intention of the parties; (2) the skill required in the particular occupation; (3) the party furnishing the equipment and the place of work; (4) the method of payment, whether by time or by the job; (5) the type of employment benefits provided; (6) the manner in which the work

5

relationship is terminated; (7) the importance of the work performed as part of the business of the employer; and (8) the manner in which taxes on income is paid. *See id.*  In assessing the amount of control an employer exercises over the employee's work duties, courts look not only to the results that are to be achieved, but the "manner and means by which the work is accomplished." *Daughtrey v. Honeywell*, 3 F.3d 1488, 1496 (11th Cir. 1993).

Although there are some aspects of the parties' relationship that are consistent with an employer-employee relationship under the common law and control factors, the weight of the evidence supports Defendant's contention that Plaintiff operated as an independent contractor for Ameri-Life.  First, both parties clearly intended for Plaintiff to operate as an independent contractor.  The terms of the Contract stated in unambiguous terms that the Plaintiff was to operate as an independent contractor and "nothing would be construed as creating the relationship of employer and employee for any purpose." Plaintiff's understanding of his employment status was also demonstrated after the Contract was signed when he treated himself as an independent contractor for federal tax purposes by filing his business expenses on Schedule C to IRS Form 1040.  Under federal tax laws, independent contractors report their business expenses on Schedule C, while employees use Schedule A to report their business expenses. *See generally*, Internal Revenue Service Publication 1779 (Rev. 12-99).

Second, the sale of insurance and other financial products is a highly specialized and heavily regulated field.  Plaintiff had to study and pass multiple exams, obtain licenses to sell these products, and comply with various federal and state laws before he could operate as an insurance agent.  The Plaintiff advised his clients without a supervisory presence.  The highly specialized nature of Plaintiff's position is indicative of an independent contractor rather than an employee.

Third, Plaintiff was primarily responsible for the costs he incurred as an insurance agent for Ameri-Life.  The contract provided that the Plaintiff was responsible for any expenses incurred in conducting business under the terms of the agreement. Plaintiff was responsible for the routine business expenses he incurred such as rent, utilities, telephone, cell phone, computer, stationary, transportation, licensing fees, and continuing education costs. Plaintiff also maintained an office at home, where he used and paid for his own equipment, including

telephone, transportation and utilities without reimbursement from the Defendant. Although the lease agreement that the Plaintiff entered into with Ameri-Life entitled the Plaintiff to the use of a desk, chair, copier, fax machine, basic secretarial services, and fifty assorted leads per month for a nominal fee of $50.00 per month, the Plaintiff claimed the aforementioned costs as business expenses for federal tax purposes on a schedule C.

Fourth, the parties' financial arrangement also supports a finding that Plaintiff was an independent contractor.  Plaintiff was compensated by commission and sales incentives rather than being paid a salary with a guaranteed, but fixed level of income, thereby placing the financial risks and benefits of the position on Plaintiff.  Plaintiff also did not receive any fringe benefits such as  sick leave, vacation time or retirement benefits.

Fifth, the Defendant treated the Plaintiff as an independent contractor because it did not pay social security, Medicare, or withhold federal income tax from the Plaintiff's commission checks.  Under federal tax laws, employers must withhold federal income tax from their employees wages, but not for payments made to independent contractors. *See generally*, Internal Revenue Service Publication 15, Circular E, Employer's Tax Guide, Part 2., p.7; Internal Revenue Service Publication 15-A, Employer's Supplemental Tax Guide, Part 1, p. 4-5 (January 2005).

Plaintiff treated himself as an independent contractor for federal tax purposes by deducting his business expenses on Schedule C to IRS Form 1040, allowing him to receive the full benefit of these deductions without being subject to the limitations that apply to employees. Taxpayers classified as employees may deduct business expenses only if they itemize their deductions, and these deductions are subject to a reduction equal to two percent of the taxpayer's adjusted gross income.  Independent contractors do not have their deductions reduced by this amount. See generally, Internal Revenue Service Publication 1779 (Rev. 12-99).

Finally, the means and method by which Plaintiff operated support Defendant's contention that he was an independent contractor.  The Plaintiff assumed fiscal responsibility for the success or failure of his business by generating his own sales through finding leads for himself, purchasing leads from telemarketers or advertising, getting referrals from clients, self-prospecting or giving speeches.  The Plaintiff was not required to work at specified times of the day or week, he was not required to maintain office hours, and he decided the location of his

7

work.   Specifically, the Plaintiff set his schedule, dictated his driving route, made most of his own appointments and advised his clients without a supervisory presence.  Ameri-Life did not control the Plaintiff's ability to form a corporation and/or to hire and pay for his own staff.  All these facts are inconsistent with an employer-employee relationship.

There are some factors that indicate that Defendant interfered with the Plaintiff's right to control the manner and the means by which he operated.  Plaintiff's work for Ameri-Life was an integral part of the company's business.  Plaintiff could be disciplined for selling another company's product without the Defendant's consent and he was required to attend certain company meetings and training sessions.  Additionally, the plaintiff was required to use the corporate address and telephone number on his business card and wear company attire. Plaintiff had to use approved forms, which were checked over by the secretary and regional manager before submission.  Although the Plaintiff did not receive paid vacation time from the Defendant, he had to seek management approval to take the time off.  Moreover, the Plaintiff was terminated without the requisite fifteen days notice under the Contract.  When considered along with all of the other common law factors and the considerable control Plaintiff had over his daily operations, these facts fail to convert Plaintiff into an employee for purposes of Title VII.

The parties' intentions, actions and overall arrangement are entirely consistent with the independent contractor relationship set forth in the Contract, not an employer-employee relationship.  Accordingly, Defendant is entitled to summary judgment on Plaintiff's Title VII claim.


Defendant alternatively argued that summary judgment on Plaintiff's retaliation claims should be awarded even if he is considered an "employee" because Plaintiff failed to demonstrate the he was retaliated against for opposing sexual harassment.  Defendant's alternative argument is not addressed in light of finding that Plaintiff worked as an independent contractor.  Accordingly, it is

**ORDERED** that Defendant's Motion for Summary Judgment (Docket No. 32) be **GRANTED;** and the Clerk is directed to enter judgment in favor of Defendant, to close this

case, and to terminate any other pending motions.

        **DONE AND ORDERED** in Chambers at Tampa, Florida this 10th day of October, 2006.



               ELIZABETH A. KOVACHEVICH
               UNITED STATES DISTRICT JUDGE

Copies to: All parties and counsel of record.

9